UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-338 (MJD/FLN) |
| Plaintiff, | |
| v. | |
| Adam Burke (1), | **REPORT AND** |
| Dana Kidd (3), | **RECOMMENDATION** |
| Defendants. | |

_____

David Michael Maria and John Kokkinen, Assistant United States Attorneys, for Plaintiff.
Aaron Morrison and Peter Wold for Defendant Adam Burke.
Robert Lengeling for Defendant Dana Kidd.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 14, 2017, on Defendant Adam Burke's motions to suppress search and seizure of a cellular telephone (ECF Nos. 89, 92) and of Burke Chiropractic Center (ECF No. 93) as well as his and Defendant Dana Kidd's motions to dismiss the Indictment (ECF Nos. 90, 94). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered two exhibits into evidence and offered testimony from Minnesota Department of Commerce Fraud Bureau Special Agent Ephraim Holmgren. *See* Exhibit and Witness List, ECF No. 103. For the reasons set forth below, the Court recommends that the motions be **DENIED**.

**A.   The Indictment**

On December 20, 2016, a United States Grand Jury returned an Indictment, charging Defendant Adam Burke with making illegal kick-back payments to Defendants Abdirahin Ibrahim, Dana Kidd, and Samatar Omar, in a scheme to defraud automobile insurance companies by

submitting claims and receiving reimbursements through his chiropractic clinic for chiropractic services that either were not medically necessary or were not rendered. Indictment, ECF No. 1. Defendants are charged with one count of conspiracy to commit health care fraud and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. *Id.* at 19–22; *see also* 18 U.S.C. §§ 1341, 1347. The Indictment alleges that Burke, who is a chiropractor and the chief executive officer of Burke Chiropractic Center, P.A., ("Burke Chiropractic"), paid Ibrahim, Kidd, and Omar to recruit automobile accident victims to show up for medical appointments and continue receiving unnecessary medical services at Burke Chiropractic. *Id.* ¶¶ 3–6. Ibrahim, Kidd, and Omar are also alleged to have paid other individuals to stage accidents and then go to Burke Chiropractic for treatments. *Id.* ¶ 13. Under this scheme, Defendants are accused of causing automobile insurance companies to have paid out over a million dollars in false and fraudulent reimbursement claims. *Id.* ¶¶ 16–18.

**B.    Burke's Motions to Suppress Search and Seizure (ECF Nos. 89, 92, and 93)**

    **1.    Search and Seizure of Cellular Phone**

First, Burke contests the initial seizure of his cell phone on December 15, 2015, as a violation of his Fourth Amendment rights. Mot. to Suppress, ECF No. 89. Special Agent Holmgren testified that after obtaining a warrant to search Burke Chiropractic Center, which included in the items to be seized, "a cellular telephone associated with telephone number 612-xxx-xxxx," he and other agents waited outside of Burke Chiropractic Center for Burke to arrive. Gov't Ex. 1, Attachment B ¶ 24, ECF No. 103. When Burke did not arrive, Agent Holmgren surveilled Burke's home in an unmarked vehicle and then followed Burke as he left his home and went to a post office. Agent Holmgren and another officer then approached Burke in the post office parking lot. Agent Holmgren

was armed and wearing visible police insignia. Agent Holmgren then explained to Burke that officers were executing a search warrant at his place of business and would like to speak with him there. He then told Burke that he did not have a search warrant for his cell phone, but that he would like to take possession of both the cell phone and his passcode. Burke gave Agent Holmgren his cell phone with the passcode, and then left on his own to meet the officers at Burke Chiropractic Center. Agent Holmgren placed the cell phone in airplane mode and gave it to the FBI evidence collection team. The cell phone was imaged and searched after a separate search warrant was obtained. *See* Gov't Ex. 2, ECF No. 103.

Burke contends that the seizure of his cell phone was involuntary and in contravention of his Fourth Amendment rights. ECF No. 89. The Government contends that: (1) Burke's decision to give his cell phone to Agent Holmgren was voluntary; (2) but even if it was not voluntary, it was both reasonable for Agent Holmgren to believe that the cell phone was given over voluntarily and to conduct a limited seizure to prevent the loss or destruction of evidence. Gov't Opp'n Mem. 25–26, ECF No. 98.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Consent is involuntary when "under all the circumstances it . . . appear[s] that the consent was . . . granted only in submission to a claim of lawful authority." *United States v. Larson*, 978 F.2d 1021, 1023 (8th Cir. 1992) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)). However, "[w]hen a person consents to a search after officers state they will attempt to obtain a warrant if the person does not consent, the consent is not necessarily coerced." *Id.* at 1024. In *United States v. Bearden*, the Eighth Circuit held that although handcuffed

3

for over fifteen minutes, placed in the back of a squad car, not advised of his rights, and consent was given in a secluded wooded area, Bearden voluntarily allowed officers to search his home. 780 F.3d 887, 895 (8th Cir. 2015). Specifically the Eighth Circuit focused on the fact that Bearden had not been "threatened, punished, intimidated, or promised anything for his consent." *Id.* Additionally, consent to a vehicle search was held to be voluntary where a suspect was taken into an interrogation room, questioned for thirty minutes, confessed to a crime, and then repeated his confession on an audio tape before providing officers with his consent. *U.S. v. Martin*, 28 F.3d 742, 743–44 (8th Cir. 1994); *see also U.S. v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012); *U.S. v. Mancias*, 350 F.3d 800, 806 (8th Cir. 2003); *U.S. v. Armstrong*, 16 F.3d 289 (8th Cir. 1994); *U.S. v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

In *United States v. Golinveaux*, a petite fifty-year-old woman with the educational level of a thirteen year old who was surrounded by large, male officers and detained for thirty-eight minutes in a Wal-Mart loss prevention office and lectured by an officer for twenty-three minutes before giving her consent, was held to have voluntarily consented to a vehicle search. 611 F.3d 956, 959–60 (8th Cir. 2010). The Eighth Circuit again focused on the fact that while:

> the environment in which she gave consent may have been intimidating . . . [s]he was not physically restrained. The officers made no promises or misrepresentations to Golinveaux. The magistrate judge pointed out that although there was no evidence Golinveaux was directly threatened, physically intimidated, or punished, she may have been physically intimidated because the officers and Wal-Mart employee or employees were all male and standing during the interview, and Golinveaux was slight, seated, and female.

*Id.* Under these conditions, the Eighth Circuit concluded that the environment in which Golinveaux consented was not unduly coercive and her consent was voluntary. *Id.*

Similarly here, Burke was not physically restrained, threatened, punished, intimidated, or

4

promised anything for his consent. Under the totality of the circumstances Burke voluntarily consented to the seizure of his cell phone. *See Golvineaux*, 611 F.3d at 959–60. The phone was not imaged and searched until after a search warrant was obtained. Therefore, the motion to suppress evidence obtained during the subsequent search must be denied.

    **2.**    **Search of Cellular Phone and Burke Chiropractic Center**

On December 14, 2015, the Honorable Magistrate Judge Becky Thorson signed a search warrant authorizing the search of Burke Chiropractic Center in Edina, Minnesota, and on December 15, 2015, signed a search warrant authorizing the search of a cellular telephone used by Adam Burke. Gov't Exs. 1–2, ECF No. 103. Burke now moves to suppress any evidence obtained during searches pursuant to these warrants, contending that because the affidavits in support of the warrants rely on Minnesota Statute section 609.12[1] ("the Runner Statute") and because the affiant failed to include reference to the August 19, 2014, *Illinois Farmers Insurance Co. v. Mobile Diagnostic Imaging* Order, *see* No. 13-cv-2820 PJS/TNL, 2014 WL 4104789, at *1 (D. Minn. Aug. 19, 2014), Magistrate Thorson did not know to disregard the allegations related to the Runner Statute in the affidavit. *See* Mots. To Suppress, ECF Nos. 92, 93. If she had, Burke contends, Judge Thorson would have determined that the affidavit does not support a finding of probable cause. *See id.* The Government argues first that the search warrant affidavits do not solely rely on violations of the Runner Statute, and second that "*Illinois Farmers* [does not] foreclose[ ] a federal prosecution for

---

[1]
> "Whoever employs, uses, or acts as a runner, capper, or steerer is guilty of a felony and may be sentenced to imprisonment for not more than three years or to a payment of a fine of not more than $6,000, or both. Charges for any services rendered by a health care provider, who violated this section in regard to the person for whom such services were rendered, are noncompensable and unenforceable as a matter of law."
>
> Minn. Stat. § 609.612, subdiv. 2.

5

mail, wire, or health care fraud based on evidence that chiropractors made kickback payments to runners and then omitted, failed to disclose, or concealed that practice." ECF No. 98 at 27.

After reviewing the Order, the Court first observes that *Illinois Farmers* does not foreclose a federal prosecution under the facts alleged in the Indictment, nor does it prohibit a probable cause finding that evidence of a crime may be found based on the affidavits at issue in this case. *See* No. 13-cv-2820 PJS/TNL, 2014 WL 4104789, at *1.

Here, FBI Special Agent Jennifer Khan authored nearly identical affidavits in support of the search warrants to search the cell phone and Burke Chiropractic Center. ECF No. 103, Gov't Exs. 1–2. The affidavits include approximately nine pages outlining the ongoing joint investigation of the FBI and the Minnesota Department of Commerce Fraud Bureau into the suspected scheme and fraud. *Id.* Based on evidence collected from a cooperating defendant and known runner, three undercover agents' experiences and observations posing as patients at Burke Chiropractic Center, and records obtained from State Farm showing reimbursement requests for the three undercover agents, Khan attested that she believed evidence of a fraud could be found in Burke Chiropractic Center and on Burke's cellular phone. *Id.*

Even assuming without deciding that the search warrants lacked probable cause, the Court concludes that the evidence is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See also United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011) ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be invalid." (citing *Leon*, 468 U.S. at 900)).

The Eighth Circuit has outlined four situations where an officer's reliance on a warrant

6

would be unreasonable: (1) the officer included information in the affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. *See United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922). None of these situations are applicable here. This is not a situation where the supporting affidavits were so devoid of factual support that it would be objectively unreasonable for a law enforcement officer to rely on it. *Cf. United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) (concluding that the good-faith exception did not apply where the affidavit at issue contained no facts that the defendant was involved in marijuana activities or that such activities were occurring on the premises searched). The record does not support a finding that the officers' reliance on the warrants were unreasonable under *Leon*. Additionally, there is no evidence that Khan included false information in the warrant application, that Judge Thorson failed to act in a neutral manner, or that the warrants were so facially deficient it would be unreasonable for an officer to rely on them. Indeed, Burke does not argue that there are factual deficiencies in the affidavits, but only contends that Khan failed to include what he believes to be applicable law. Therefore, Burke's motions to suppress evidence obtained pursuant to the search warrants authorizing the search of his cell phone and of Burke Chiropractic Center, must be denied. See *Leon*, 468 U.S. at 922.

**C.     Motions to Dismiss (ECF Nos. 90 and 94)**

Burke and Kidd both move to dismiss the Indictment. Mots. to Dismiss, ECF Nos. 90, 94. Both Defendants argue that Minnesota law should be removed from the Indictment as surplusage and that once they are, "no facts remain to support the allegation that Defendant and the co-

7

defendants were involved in a conspiracy to provide unnecessary medical services." ECF No. 90 at 3. Specifically, Burke contends that:

> The indictment does not offer the essential facts necessary to support the conspiracy charges that Defendant conspired with the co-defendants to claim reimbursement from insurance companies for unnecessary medical treatment. Instead, the indictment at best alleges defendants conspired to violate Minnesota law, in this case an allegation that cannot sustain a federal indictment.

*Id.* The Government opposes the motions stating that they are "premised entirely on the success of the motions to strike surplusage . . . [which] are without merit and should be denied." The Court concludes that any information related to Minnesota Statute § 609.612, is relevant to the intent of the parties and the counts charged and not so inflammatory as to be prejudicial. Any prejudice suffered by the allegations in the Indictment are outweighed by their relevancy to the charges. Because the Court denies the various motions to strike surplusage, it also denies the motions to dismiss.[2] Indeed, at the hearing, counsel for Burke admitted that Paragraph 20 in the Indictment outlines the elements of a conspiracy to commit health care and mail fraud and would be enough to avoid dismissal of the Indictment. Defendants' arguments may be raised as defenses at trial, but are not a basis for dismissal. The motions to dismiss must be denied.

**D.      Recommendation**

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Burke's Motion to Suppress Search and Seizure of a Cellular Telephone (ECF No. 89) be **DENIED**.

---

[2] To the extent that Kidd contends that there is a distinction between medical service providers and alleged runners under the Runner Statute, any possible distinction is irrelevant to the charged conspiracy that Kidd is accused of participating in.

2. Burke's Motion to Suppress Search and Seizure of Items – Cellular Telephone (ECF No. 92) be **DENIED**.

3. Burke's Motion to Suppress Search and Seizure of Items – Burke Chiropractic Center (ECF No. 93) be **DENIED**.

4. Burke and Kidd's Motions to Dismiss the Indictment (ECF Nos. 90 and 94) be **DENIED**.

Dated: May 22, 2017                              *s/Franklin L. Noel*
                                                 Franklin L. Noel
                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 5, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 5, 2017** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.